# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NELSON RYDER  :
:
    Plaintiff  :
v.  :    3:12-CV-614
:    (JUDGE MARIANI)
DAVID VARANO, et al.,  :
:
    Defendants  :

## MEMORANDUM OPINION

### I. Introduction

On April 11, 2013, Plaintiff filed an Amended Complaint ("Am. Compl.," Doc. 33) containing nineteen claims founded on 42 U.S.C. § 1983 against fifteen defendants. After screening the Amended Complaint under 28 U.S.C. § 1915(e), Magistrate Judge Blewitt recommended dismissing Count I with prejudice and the remaining eighteen claims without prejudice, with leave to re-file each count as a separate cause of action. (Doc. 36). Plaintiff objected (Doc. 40) and argued, *inter alia*, that the remaining eighteen claims (with the exception of Count 19) were interrelated. For the reasons that follow, the Court will decline to adopt the Report & Recommendation.

### II. Analysis

"No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Exhaustion is mandatory,

and prisoners must exhaust all 'available' remedies, even where the relief sought cannot be granted through the administrative process." *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006)). "Additionally, the PLRA requires 'proper exhaustion,' meaning that the prisoner must comply with all the administrative requirements and not merely wait until there are no administrative remedies 'available.'" *Id.*

Before addressing Plaintiff's claims, the Court will first find that Counts 1-18 arise from various disputes Plaintiff had with the named defendants pertaining to his working conditions, misconducts he was issued while working, and whether the named defendants retaliated (or conspired to retaliate) against him when he complained about various work-related matters. Under FED. R. CIV. P. 20(a)(1)(2), "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them . . . arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Though the events contained in the Amended Complaint span a time period covering several months (excluding Count 19), they can be read collectively to allege a series of escalating disputes between Plaintiff and the named defendants (*see infra*). In the Court's view, it would be extremely onerous for Plaintiff to file each count as a separate cause of action, especially when so many defendants are common to the claims (e.g., Kelley, the Anascavage brothers, etc.). Not only would Plaintiff be burdened if the Court severed all of

2

his claims, so would the defendants who would have to file multiple Answers and dispositive motions. Therefore, the Court will not adopt the recommendation to sever all of Plaintiff's claims.

### a. Count 1

Plaintiff formerly worked as a Special Diet Cook in the Food Service Department. (Am. Compl. at ¶ 9). On October 31, 2010, he was accused of committing a Class II misconduct, Taking or Having Unauthorized Food (i.e., two slices of cheese). (*Id.*). In Count 1, he claims he was denied due process when he was docked eight hours of pay without receiving the benefit of a hearing and a copy of the misconduct.

He sues Defendants Benner and Redd for the action of docking his pay and supervisory defendants Bartholomew, Shedleski, and Ellet for failing to intervene after he filed Inmate Request Forms with each of them. (*Id.* at ¶ 13). He also filed a grievance on April 18, 2011 (No. 363014),[1] fifteen working days after discovering that eight hours of pay had been withheld from him.

In his Amended Complaint, Plaintiff alleges that "Benner told [him] that he didn't know [that docking pay without a pre-deprivation hearing was not permitted] and then indicated that supervisory staff trained him and other staff members to routinely discredit an inmate's account in this manner." (*Id.* at ¶ 15).

---

[1] Plaintiff submitted copies of his initial Official Inmate Grievance, its Rejection, and his subsequent Appeal to Facility Manager (Doc. 48), but it is unclear whether he exhausted his administrative remedies as to this claim.

3

Judge Blewitt recommended dismissing this claim with prejudice against supervisory defendants Bartholomew, Shedleski, and Ellet because they cannot be held liable on *respondeat superior* grounds. (Doc. 36 at 14-15). He did not address the liability of defendants Benner and Redd. While it is true that *"respondeat superior* liability does not exist in the § 1983 context." *Ward v. Taylor*, 348 F. App'x 766, 769 (3d Cir. 2009) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988) (a defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*"), the Court finds that Plaintiff has pled that the supervisory defendants were personally involved in the actions that led to the loss of eight hours of pay because Defendant Benner allegedly admitted to him that supervisory staff trained him to routinely dock inmate pay for infractions of prison policies. (*See* Am. Compl. at ¶ 15).

Furthermore, it is well-settled in the Third Circuit that "[i]nmates have a property interest in funds held in prison accounts." *Reynolds v. Wagner*, 128 F.3d 166, 179 (3d Cir. 1997). Accordingly, "inmates are entitled to due process with respect to any deprivation of this money." *Higgins v. Beyer*, 293 F.3d 683, 693 (3d Cir. 2002) (quoting *Reynolds*, 128 F.3d at 179). The Circuit reaffirmed this principle in a pair of recent decisions arising out of the same case:

> In sum, we are satisfied that the Department of Corrections' assessment of Burns' institutional account constituted the deprivation of a protected property interest for purposes of procedural due process. Through its assessment, the Department of Corrections attained a status akin to that of a Judgment Creditor. In doing so, it necessarily reduced the economic value of Burns'

4

account for a period of more than three years. That deprivation is sufficient to trigger the protections of the Due Process Clause.

*Burns v. Pennsylvania Dep't of Correction*, 544 F.3d 279, 291 (3d Cir. 2008) (*Burns I*); *Burns v. Pennsylvania Dep't of Correction*, 642 F.3d 163, 171 (3d Cir. 2011) ("We have already determined that Burns does have a protected property interest in the assessment of his prison account and was therefore entitled to due process *prior to the assessment of his account*.") (emphasis added) (*Burns II*).

In *Burns I*, at a misconduct hearing, Burns had been convicted of assaulting another inmate (Mobley) and his disciplinary punishment included an assessment from his inmate account to cover Mobley's medical bills.[2] The *Burns II* court held that "the [misconduct] hearing over which [one defendant] presided is the *only opportunity under Pennsylvania law for an inmate to challenge whether his or her prison account should be assessed* (not merely the amount to be debited)."[3] *Id.* at 178 (emphasis added).

Here, Plaintiff was charged with Taking or Having Unauthorized Food, a Class II misconduct. Under Pennsylvania law,

> [i]nmates found guilty of Class II misconducts may be subjected to one or more of the following sanctions:

---

[2] In *Burns*, the plaintiff's account was to be assessed $10 originally, but it was never collected. Here, Plaintiff's alleged loss of eight hours' worth of pay totals $3.36 (8 hours x. 0.42). In *Burns II*, the Third Circuit explained that "we are not willing to ignore [an inmate's] interest in property, nor are we willing to say that it is so *de minimis* that the requirements of the Due Process Clause are substantially reduced." 642 F.3d at 172-73.

[3] Under Pennsylvania law, an inmate is entitled to a "*Holloway* hearing" to "determine[] the amount of money to be assessed from a prisoner's account." *Burns II*, 642 F.3d at 178 (citing *Holloway v. Lehman*, 671 A.2d 1179 (Pa. Commw. Ct. 1996)). However, a *Holloway* hearing "does not provide an opportunity to challenge the fact of the assessment in the first place. That determination is made at a misconduct hearing—such as the hearing over which Canino presided." *Id.*

5

(i) Reprimand.
(ii) Suspension of privileges for a specified period of time.
(iii) Payment of the fair value of property lost or destroyed or for expenses incurred as a result of the misconduct.
(iv) Change of cell assignment excluding placement in the restricted housing unit.
(v) Change, suspension or removal from job.

37 PA. CODE § 93.10(a)(2). Plaintiff alleges that he was not paid for eight hours of time that he worked,[4] that he was neither issued a misconduct nor was convicted of it, and he never received a pre-deprivation hearing on the matter before his pay was docked. Provided that Plaintiff can show that he exhausted his administrative remedies, the Court finds that he has sufficiently stated a claim for denial of procedural due process rights in Count 1 against all named defendants.

### b. Counts 2-11

Plaintiff characterizes Counts 2-11 as falling under Grievance No. 353479, which he filed on February 10, 2011 (Doc. 49). Collectively, Counts 2-11 encompass events that arose between November 30, 2010 and February 7, 2011. Plaintiff sues certain defendants (Kelley, Gary Anascavage, Robert Anascavage, Leisenring, Schenework, and Varano) for threatening and retaliatory actions they allegedly took against him during that time. These actions included threatening to issue misconducts against him for complaining about mistreatment (Count 2), docking pay in retaliation for his complaints about not being paid for

---

[4] The Court notes that the allegation is a failure to pay funds rightfully earned by Plaintiff into his inmate account, as opposed to assessing funds that were already in his account. In the Court's view, Plaintiff's allegation is that he was entitled to funds for hours worked, so whether the funds were withheld from his account or removed from it is a distinction that does not change the outcome of the analysis.

6

hours he had worked (Count 3), conspiring to issue a false misconduct against him (Count 4), threatening Plaintiff for complaining about a defendant who took Plaintiff's rubber non-skid floor mats (Count 5), instructing Plaintiff to participate in a cover-up of a conspiracy against another inmate (Count 6), blocking a transfer to the Meat Prep Room in retaliation for prior complaints (Count 7), on January 27, 2011,[5] falsely issuing a misconduct to Plaintiff for stealing food (i.e., roast beef) when security footage showed that Plaintiff was merely cleaning up a mess someone else had created in the kitchen (Count 8), failing to provide a copy of the misconduct to Plaintiff, in violation of prison policy (Count 9), on February 3, 2011, informing Plaintiff that he would be transferred to another job because Plaintiff was "all cocky," (Count 10), and on February 7, 2011, re-assigning Plaintiff to an "unskilled" job with "three (3) hours less pay per work day for the next 133 days which ensued," (Count 11).

Grievance No. 353479, however, mentions events found only in Counts 8-11 of the Amended Complaint. In fact, Plaintiff admits that he did not file a timely grievance for events arising before January 27, 2011 (see, e.g., Am. Compl. at ¶¶ 17, 19, 21, 25, 26, 28) (encompassing Counts 2-7). He alleges that as a result of threats or other actions taken by defendants, they "actually deterred [him] from filing a formal written grievance," resulting in "forever los[ing] the ability to raise" these claims. (Id.).

---

[5] By this time, Plaintiff was a Special Cleaner assigned to the Bakery. (Id. at ¶ 29).

7

The Third Circuit "has made clear that the exhaustion requirement is mandatory, and has not recognized 'sensitive' subject matter or 'fear of retaliation' as a basis for excusing a prisoner's failure to exhaust." *Pena-Ruiz v. Solorzano*, 281 F. App'x 110, 113 (3d Cir. 2008) (citing *Williams*, 482 F.3d at 639). Even assuming that a fear of retaliation could excuse a prisoner's failure to exhaust, the Third Circuit previously found that another inmate asserting fear of retaliation as an excuse for his failure to exhaust had

> not made a sufficient showing of intimidation. As the District Court noted, the evidence Barger provided is also inconsistent with his main allegation. Barger's contention that he was too intimidated to file an administrative grievance conflicts with his submission of an "Inmate Request Form" directly to the Warden in which he documents this threat. Furthermore, Barger was evidently not deterred from filing the instant lawsuit regarding his medical treatment.

*Barger v. Walton*, 317 F. App'x 188, 190 (3d Cir. 2009). Similarly, the Amended Complaint and exhibits of record show that Plaintiff filed no fewer than three grievances in connection with his claims (Nos. 363014, 353479, and 380989) and also filed at least three Inmate Request Forms pertaining to pay withheld from him. (Am. Compl. at ¶ 13).

Because it "is apparent from the face of the complaint" that Plaintiff did not properly exhaust his administrative remedies pertaining to Counts 2-7, these claims will be dismissed. *Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002). In contrast, Plaintiff exhausted his administrative remedies pertaining to Grievance No. 353479 (encompassing Claims 8-

11) which was denied. Though Counts 8-11 may not necessarily be separate actions,[6] the allegations contained within them survive screening under the PLRA.

### c. Counts 12-14

Count 12 pertains to actions that took place after Plaintiff filed Grievance No. 353479. Plaintiff alleges that (a) Defendant Klock failed to provide Plaintiff with a copy of the misconduct (for taking roast beef) which had been dismissed under prison policies because a hearing had not been held within seven days (Am. Compl. at ¶ 45), and (b) defendants retained Plaintiff as an "unskilled" worker instead of reinstating him as a Special Cleaner to the Bakery after the misconduct was dismissed. (*Id.* at ¶ 47).

Count 13 claims that defendants endangered Plaintiff when rumors of Plaintiff's complaints contained within Grievance No. 353479 circulated to the general prison population where he was labeled a snitch. From the Court's reading of Count 13, Plaintiff clearly names Varano as a defendant, but it is unclear whether Plaintiff seeks to hold other defendants (such as Kelley), responsible for the dissemination of the contents of his grievance, as well.

It is unclear whether Plaintiff exhausted his administrative remedies in connection with Counts 12 and 13.

Count 14 claims that after filing a civil lawsuit in Northumberland County Court of Common Pleas pertaining to Counts 1-13, certain defendants openly discussed the lawsuit

---

[6] For instance, the facts alleged in Count 10 are more properly background facts in support of Count 11.

9

and informed Plaintiff that his "days in the Kitchen were numbered." Plaintiff admits that he did not file a grievance in connection with this threat. (*Id.* at ¶ 66).[7]

Therefore, the Court will dismiss Count 14 for failure to exhaust, but will permit Counts 12 and 13 to proceed. If Plaintiff has failed to exhaust his administrative remedies pursuant to Counts 12 and 13, the defendants may move to dismiss those claims at a later time.

### d. Counts 15-17

Counts 15-17 pertain to allegations of retaliation based on Plaintiff's state court lawsuit. Plaintiff claims that he was issued a misconduct (No. B421624, Doc. 49) on August 31, 2011 for allegedly taking unauthorized food (i.e., three chocolate chip cookies) which resulted in suspension without pay and an assessment of $1.50 on Plaintiff's inmate account (Count 15), but he never received a copy of the misconduct before the informal resolution hearing wherein he pleaded guilty (Count 16), and as a result of his guilty plea, he was transferred to the general labor pool where his wages were reduced from $75 per month to $15 per month (Count 17).

In accordance with Section 5 of DC-ADM 801 Plaintiff appealed this misconduct and his guilty plea on September 5, 2011 to the Program Review Committee, then to the Facility

---

[7] Additionally, the Third Circuit has not yet recognized retaliation in the form of verbal threats alone as a cause of action. *See, e.g., Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) ("the verbal threats and few gestures of racial harassment Dunbar allegedly encountered are not sufficiently adverse to support a retaliation claim under the circumstances of this case."); *Wilson v. Zielke*, 382 F. App'x 151, 153 (3d Cir. 2010) ("neither the United States Supreme Court nor this Circuit has defined with specificity the contours of when a threat constitutes an adverse action in the official-detainee setting."); *Burgos v. Canino*, 358 F. App'x 302, 306 (3d Cir. 2009) ("because threats alone do not constitute retaliation, the claim relating to the threat failed.").

Manager, and finally, to the Office of the Chief Counsel of the Pennsylvania Department of Corrections, all of which found the punishment of $1.50 was not disproportionate to the charge. (Doc. 49). Meanwhile, on September 9, 2011, Plaintiff had filed Grievance No. 380989 which covered complaints covered in Counts 15-17. Plaintiff exhausted this grievance which was denied in part because Plaintiff had already pursued an appeal of the misconduct itself. (*See* copies of filings at Doc. 45).

### e. Count 18

Count 18 claims that Defendant Zalinski refused to hire Plaintiff as a laundry worker in retaliation for Plaintiff's state court lawsuit against Zalinski's colleagues. Plaintiff admits that he never filed a grievance in connection with this event. (*Id.* at ¶ 96).

### f. Count 19

Plaintiff concedes that Count 19 against Defendant Varano for inadequate living conditions (i.e. black mold in his cell) should be filed as a separate action because it is unrelated to his claims of denial of due process and access to the courts, retaliation, and conspiracy. (*See* Doc. 38, at 8, n.2).

### III. Conclusion

Based on the foregoing, the Court will dismiss Counts 2-7, 14, and 18 for failure to exhaust administrative remedies. It will also dismiss Count 19 without prejudice, with leave to file it as a separate cause of action. Finally, it will permit Counts 1, 8-13, and 15-17 to remain.

11

An Order consistent with this Memorandum follows.

Robert D. Mariani
United States District Judge